IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| ZACHARY MOHOLT, et al. | : |
|  | : |
| v. | : Civil Action No. DKC 2004-3960 |
|  | : |
| JERRY D. WEAST, et al. | : |
|  | : |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case brought under the Individuals with Disabilities Education Act are (1) the motion of Plaintiffs Zachary Moholt, Eric Moholt, and Lisa Moholt, for summary judgment; and (2) the cross-motion of Defendants Jerry D. Weast and the Board of Education of Montgomery County for summary judgment. The issues are briefed and the court has reviewed the administrative record in its entirety. The court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the court denies Plaintiffs' motion for summary judgment, and grants Defendants' cross-motion for summary judgment.

**I.   The Individuals with Disabilities Education Act**

The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., and accompanying regulations, 34 C.F.R. § 300 et seq., require all states that receive federal funds for education to provide each child between the ages of three and twenty-one, who has a disability, with a free and appropriate public education ("FAPE"). 20 U.S.C. § 1412(a)(1)(A). Maryland's regulations governing the provision of a FAPE to children with

disabilities in accordance with the IDEA are found at Md. Regs.
Code tit. 13A, § 05.01.

The FAPE guaranteed by the IDEA must provide a disabled child
with meaningful access to the educational process. *See Bd. of
Educ. of the Henrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S.
176, 192 (1982). The FAPE must be reasonably calculated to confer
"some educational benefit" on the disabled child. *Id.* at 207. The
benefit must also be provided in the least restrictive environment
appropriate to the child's needs, with the disabled child
participating to the "maximum extent appropriate" in the same
activities as his or her non-disabled peers. 20 U.S.C. §
1412(a)(5)(A); *see also* 34 C.F.R. § 300.550. The IDEA does not
require that a school district provide a disabled child with the
best possible education, *Rowley,* 458 U.S. at 192, or that the
education maximize each child's potential, s*ee Hartmann v. Loudoun
County Bd. of Educ.,* 118 F.3d 996, 1001 (4th Cir. 1997). The
benefit conferred, however, must amount to more than trivial
progress. *See Reusch v. Fountain,* 872 F. Supp. 1421, 1425 (D.Md.
1994) (*Rowley's* "'some educational benefit' prong will not be met
by the provision of de minimis, trivial learning opportunities.")
(citing *Hall v. Vance County Bd. of Educ.,* 774 F.2d 629, 635 (4th
Cir. 1985)).

To assure delivery of a FAPE, the IDEA requires a school
district to provide an appropriate Individualized Education Program
("IEP") for each child determined to be learning disabled. 20
U.S.C. § 1414(d). That IEP is formulated by a team ("IEP Team")
consisting of the parents or guardian of the child, a
representative of the school district, the child's regular and
special education teachers, an individual who can interpret results

2

of evaluations of the child, and, when appropriate, the child himself or herself. 20 U.S.C. § 1414(d)(1)(B); Md. Regs. Code tit. 13A, § 05.01.07(A). The IEP must state the student's current educational status, annual goals for the student's education, the special educational services and other aids that will be provided to the child to meet those goals, and the extent to which the child will be "mainstreamed," i.e., spend time in regular school environments with non-disabled students. 20 U.S.C. § 1414(d)(1)(A).

The IDEA provides a series of procedural safeguards "designed to ensure that the parents or guardian of a child with a disability are both notified of decisions affecting their child and given an opportunity to object to those decisions." *MM ex rel. DM v. Sch. Dist. of Greenville County,* 303 F.3d 523, 527 (4th Cir. 2002) (internal quotation marks and citation omitted); *see also* 20 U.S.C. § 1415. Among those safeguards, a parent must be provided prior written notice of a decision to propose or change the educational placement of a student. Md. Regs. Code tit. 13A, § 05.01.13(B). A parent may also request a meeting at any time to review and, as appropriate, revise the student's IEP. Md. Regs. Code tit. 13A, § 05.01.08(B)(3).

If the parents are not satisfied with the IEP, they may present a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child." 20 U.S.C. § 1415(b)(6). After such a complaint has been received, the parents also are entitled to request a due process hearing conducted by the state or local educational agency. 20 U.S.C. § 1415(f). In Maryland, the Maryland Office of Administrative Hearings conducts

the due process hearing.  Md. Code Ann., Educ. § 8-413; Md. Regs. Code tit. 13A, § 05.01.15(C)(1).  Any party can then appeal the administrative ruling to federal or state court. Md. Code Ann., Educ. §  8-413(h).

When a FAPE is not provided to a disabled student, the student's parent may place the child in a private school and then seek tuition reimbursement from the state.  *See Sch. Comm. of Burlington v. Dep't of Ed.,* 471 U.S. 359, 369-70 (1985).  The parent will recover if (1) the placement proposed by the state was inadequate to offer the child a FAPE, and (2) the private education services obtained by the parents were appropriate to the child's needs.  *Id.* at 370.

## II.  Background

The facts presented are derived from the administrative record of the due process hearing including the transcript and admitted exhibits and are uncontested unless otherwise noted.  Plaintiff Zachary Moholt was born on May 15, 1996.  Zachary attended kindergarten at Goshen Elementary School ("Goshen"), a Montgomery County Public School ("MCPS"), during the 2001-2002 school year.[1] During this period, Zachary did not receive special educational services from the school system, although his parents provided him with occupational therapy.  At the end of the kindergarten year, Ms. Moholt, concerned about Zachary's progress, asked Ms. Luckenbaugh, Zachary's kindergarten teacher, if "she felt that we should seek extra help within the School System for Zachary." (Paper 6, Tr., at 49.)  Ms. Luckenbaugh advised Ms. Moholt that she

---

[1] MCPS is governed by Defendant Montgomery County Board of Education.  Defendant Jerry Weast is superintendent of MCPS.

did not believe that it was necessary.[2]   Zachary's kindergarten
report card showed that in all areas Zachary was either rated as
"proficient" or that the goal was "in progress." (Paper 6, MCPS ex.
1).

During the 2002-2003 school year, Zachary attended first grade
at Goshen.  In October 2002, at his parents' request, the Treatment
and Early Learning Center ("TLC"), a private organization,
evaluated Zachary.  Zachary's parents initiated the evaluation
because they felt Zachary was unable to work at grade level and had
become withdrawn from school.[3]  (Paper 6, Plaintiffs ex. 4).

Based on the results of the TLC evaluation, Zachary's parents
requested an IEP meeting.  MCPS conducted additional evaluations,
(paper 6, MCPS exs. 3-6), and held an initial IEP meeting on
December 16, 2002.  At that meeting, it was decided that further
evaluation was required.  A second IEP meeting was held on February
10, 2003.  Zachary's parents attended the meeting accompanied by a
private educational consultant, Ms. Castle.[4]   At the second

---

[2] Plaintiffs' complaint and their motion for summary judgment
directly conflict with Ms. Moholt's testimony.  Ms. Moholt
testified that she did not ask Ms. Luckenbaugh about extra services
until the end of the year.  Moreover, when asked by both the ALJ
and her own attorney to confirm that the request happened at the
*end of the year*, Ms. Moholt affirmed.  Conversely, both the
complaint and the motion state: "On three or four occasions during
his kindergarten year, [Ms. Moholt] requested that MCPS evaluate
Zac for learning disabilities." (Paper 1, at 4; Paper 9, at 5).

[3] During November 2002, Zachary's parents also began exploring
the option of private schools for Zachary, and applied to the Lab
School of Washington.  (Paper 6, Tr., at 137).

[4] Ms. Moholt testified that Ms. Castle attended the meeting
"to ensure that Zachary would be receiving adequate services."
(continued...)

meeting, the IEP team agreed with the TLC report and, based on that report and the evaluations completed by MCPS, concluded that Zachary was entitled to special education services.  The IEP team recommended, with the agreement of Zachary's parents, that Ms. Storm, Goshen's special education resource teacher, provide Zachary with three hours of special education services each week.[5]  The IEP contained specific goals in the areas of written expression, reading, and math.  (Paper 6, MCPS ex. 11).  The notes from the meeting state that speech and language therapy was not necessary but that the resource teacher would work with Zachary on phonemic awareness.  The notes also indicate that the IEP team would later integrate the results of an occupational therapy ("OT") evaluation once it was completed.

In March 2002, Ms. Auerbach, an occupational therapist at MCPS, reviewed reports written by Zachary's private OT providers, and observed and tested Zachary.  Ms. Auerbach concluded that Zachary should receive OT, and recommended an "occupational therapy

---

[4](...continued)
(Paper 6, Tr., at 74).

[5] There is no dispute that Zachary's parents signed the IEP form, thereby communicating formal acceptance with the plan.  In their motion for summary judgment, Plaintiffs argue that the parents signed the form because "MCPS advised that it would be unable to implement *any* services for Zac without the parents' signature." (Paper 9, at 10).  This statement directly conflicts with Ms. Moholt's testimony, in which she answered "no," when asked whether anyone told her if she did not sign the form that her son would not receive any services. (Paper 6, Tr., at 162).  Moreover, Plaintiffs have stipulated that at every stage of the IEP process they were provided with notification of their rights and procedural safeguards under the IDEA. (Paper 6, ALJ decision, at 9).

consult."[6]  (Paper 6, MCPS ex. 11A).  In May 2003, at the request of Ms. Storm, a follow-up IEP meeting was held.  Ms. Storm requested that two additional hours of direct special education services be added to Zachary's IEP.  Also at this time, the IEP team decided to designate thirty minutes of the five special education hours to OT, despite the fact that Ms. Auerbach had only recommended "consult" services.  Two additional goals, involving handwriting and focus on classroom activities, were added to the IEP.  Zachary's parents agreed with the changes to the IEP.  The notes from that meeting state: "Parents are seeing much improvement in Zac[]'s attitude toward school."  In addition, the notes state that Zachary's parents inquired as to whether the "LAD" program would be appropriate for him for the following school year, but there is no indication of MCPS's response to this request.[7]

On June 4, 2003, a final IEP meeting was held to discuss Zachary's progress, and to plan for the following school year.  In preparation for the meeting, Ms. Moholt completed a parent report.  The report noted multiple improvements in Zachary's performance.  For example, Ms. Moholt stated that "Zac is now willing to try new concepts," "[h]is phonemic awareness has improved," and that "Zac

---

[6] An occupational therapy consult involves an occupational therapist collaborating with the classroom teacher.  The classroom teacher then implements the OT within the general classroom setting; the child is not removed from the classroom for specialized treatment in a separate location. (Paper 6, Tr., at 650-51).

[7] It is unclear from the record whether LAD is an acronym for "Learning and Academic Difficulty" or "Learning and Academic Disability."  It is a level of special education that includes twenty to twenty-five hours per week of direct special education (i.e., where Zachary would be pulled from the general education environment).  (Paper 6, ALJ decision, at 8, n.2).

has made some progress with math concepts." Ms. Moholt also included goals for Zachary for the following school year, including reading on or close to grade level, and "continu[ing] to view school [and] learning as well as himself in a positive manner." (Paper 6, MCPS ex. 15).

At the meeting, Zachary's progress during the previous school year was reviewed. The IEP report indicates that Zachary was making progress on all short-term goals. (Paper 6, MCPS ex. 11). Ms. Storm also testified that she felt that Zachary was making progress in reading and writing and that his self-esteem had improved. (Paper 6, Tr., at 713-714). Ms. Storm stated that Zachary was seeing himself as "a learner rather than as a 'I can't' someone." (Paper 6, Tr., at 714). Zachary's third and fourth quarter report cards also indicated improvement in multiple areas, including speaking, mathematic concepts, and paying attention in class. Zachary was rated as on grade level with regard to math, and below grade level with regard to reading. (Paper 6, MCPS ex. 17).

The IEP team recommended, and Zachary's parents agreed, that the same level of special education services be implemented for the following 2003-2004 school year. The Moholts again inquired about the LAD program. The notes from the meeting indicate that Ms. Storm stated that the team would meet again in the fall to monitor the program, and if the current IEP was not working, that the IEP team might then look at the LAD program. Ms. Storm testified that at that point in time, she did not feel like the LAD program would be the "least restrictive environment" for Zachary. (Paper 6, Tr., at 704). Ms. Moholt testified that, during this meeting, she did not indicate any displeasure with her son's education program for

8

the 2002-2003 year, nor did she advise anyone on the IEP team about her efforts to pursue private education at the Lab School. (Paper 6, Tr., at 169).

During the summer of 2003, the Moholts enrolled Zachary in a summer program at the Lab School, where they felt Zachary made great progress. Zachary returned to Goshen for his second grade year, on or about August 26, 2003. At some point in late August 2003, the Lab School notified the Moholts that Zachary had been accepted to the school for that school year. On August 28, 2003, Ms. Moholt hand-delivered a letter to Goshen's principal, Ms. King, to notify her that Zachary would be leaving Goshen and attending the Lab School. (Paper 6, MCPS ex. 18). At this time, Ms. Moholt did not indicate her intent to pursue reimbursement for Zachary's tuition at the Lab School.

On or around June 18, 2004, Zachary's parents filed a request for a due process hearing alleging that Zachary was denied a FAPE during the 2003-2004 school year and seeking funding for Zachary's placement at the Lab School during that year. Defendants filed a motion to dismiss the claim, based on the failure of Zachary's parents to provide sufficient notice to MCPS regarding Zachary's withdrawal from Goshen, as is required under both federal and state law.[8]

The due process hearing began on July 19, 2004, and was continued on August 3, 2004, and August 23, 2004. On July 19,

---

[8] The applicable law provides that the ALJ *may* deny reimbursement if the statutory notice provisions are not met. The notice provisions state that parents must notify the school of their intent to reject the proposed placement and to withdraw the child either at the most recent IEP meeting or ten business days prior to the removal of the child. *See* 20 U.S.C. § 1412(a)(10)(C).

2004, ALJ Marleen B. Miller denied MCPS's motion to dismiss, and
proceeded to hear the merits of the case.[9]  On September 23, 2004,
the ALJ found that MCPS provided Zachary with a FAPE and denied the
Moholt's request for tuition reimbursement. (Paper 6, ALJ decision,
at 21).   The Moholts appealed to this court.   Here, the Moholts
seek: (1) a declaration that Defendants violated Plaintiffs' rights
under the law; (2) injunctive relief ordering Defendants to
reimburse Plaintiffs for the tuition expenses for the 2003-2004
school year at the Lab School; (3) a declaration that the Lab
School is Zachary's current educational placement under the IDEA;
(4) attorneys' fees and costs; and (5) any other relief the court
deems just.   Defendants, in their cross-motion for summary
judgment, seek dismissal of the complaint and attorneys' fees and
costs.

## III.  Motions for Summary Judgment

## A.  Standard of Review

In *MM v. Sch. Dist. of Greenville County*, 303 F.3d 523 (4th
Cir. 2002), the Fourth Circuit stated the standard of review for
motions for summary judgment in IDEA cases:

> In a judicial proceeding under the IDEA, a reviewing
> court is obliged to conduct a modified *de novo* review,
> giving "due weight" to the underlying administrative

---

[9] In her opinion, the ALJ stated that although she believed
that the Moholts did not comply with the statutory notice
requirements, she exercised her discretion *not* to deny relief on
this basis.  Instead, the ALJ denied relief based on the merits of
the Moholts' claims.  Plaintiffs devote an entire section of their
motion for summary judgment to the assertion that the ALJ
misapplied the facts and the law with regard to the notice issue
and in doing so erroneously penalized them.  (Paper 9, at 23).
However, because lack of notice was not the basis for the ALJ's
tuition denial, and there is no evidence that Plaintiffs were
"penalized" in any way, this court need not consider Plaintiffs'
argument.

> proceedings.  In such a situation, findings of fact made
> in administrative proceedings are considered to be prima
> facie correct, and if a reviewing court fails to adhere
> to them, it is obliged to explain why.  The court is not,
> however,  to  substitute  [its]  own  notions  of  sound
> educational policy for those of local school authorities
> . . . .

303 F.3d at 530-31 (citations omitted).  General standards of

review for summary judgment motions also apply in IDEA cases, as

illustrated in *Bd. of Educ. of Frederick County v. I.S.,* 325

F.Supp.2d 565 (D.Md. 2004):

> In addition, the Court's analysis is shaped by the
> mandate of Rule 56(c) of the Federal Rules of Civil
> Procedure that summary judgment "shall be rendered
> forthwith if the pleadings, depositions, answers to
> interrogatories, and admissions on file, together with
> the affidavits, if any, show that there is no genuine
> issue as to any material fact and that the moving party
> is entitled to a judgment as a matter of law." "When the
> moving party has met its responsibility of identifying
> the basis for its motion, the nonmoving party must come
> forward with 'specific facts showing that there is a
> genuine issue for trial.'" *White v. Rockingham
> Radiologists, Ltd.,* 820 F.2d 98, 101 (4th Cir. 1987)
> (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 324
> (1986); Fed. R. Civ. P. 56(e)).  The Court's function is
> limited to determining whether sufficient evidence
> supporting a claimed factual dispute exists to warrant
> resolution of the matter at trial. *Anderson v. Liberty
> Lobby, Inc.,* 477 U.S. 242, 249 (1986). In that context,
> a court is obligated to consider the facts and all
> reasonable inferences in the light most favorable to the
> nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith
> Radio Corp.,* 475 U.S. 574, 587 (1986).  Where, as here,
> cross-motions for summary judgment are filed, a court
> must "evaluate each party's motion on its own merits,
> taking care to draw all reasonable inferences against the
> party whose motion is under consideration." *Mingus
> Contractors, Inc. v. United States,* 812 F.2d 1387, 1391
> (Fed. Cir. 1987).

325 F.Supp.2d at 578.

Plaintiffs in IDEA cases face an uphill battle for several

reasons.  First, just as Plaintiffs were required to carry the

burden of proof in the administrative hearing, *Schaffer ex rel. Schaffer v. Weast*, __ U.S. __, 126 S.Ct. 528, 537 (2005), Plaintiffs must also carry that burden in this court, *I.S.*, 325 F.Supp.2d at 27 *(*"As the party challenging the administrative findings, Plaintiffs bear the burden of proof of establishing a violation of the IDEA."); *Cavanagh v. Grasmick,* 75 F.Supp.2d 446, 457 (D.Md. 1999)). Second, "[i]f the administrative findings were made in a regular manner and have evidentiary support, they are to be considered *prima facie* correct." *Cavanagh*, 75 F.Supp.2d at 457 (citing *Doyle v. Arlington County Sch. Bd.,* 953 F.2d 100, 103 (4th Cir. 1991)). Moreover, in according "due weight" to the findings of the ALJ, this court owes deference to the ALJ's determinations of the credibility of witnesses. "[T]he fact-finder, who has the advantage of hearing the witnesses, is in the best position to assess credibility." *Justin G. v. Bd. of Educ.,* 148 F.Supp.2d 576, 588 (D.Md. 2001) (quoting *Bd. of Educ. of Montgomery County v. Hunter ex rel. Hunter,* 84 F.Supp.2d 702, 706 (D.Md. 2000)); *see also Doyle,* 953 F.2d at 104. Lastly, this court owes generous deference (as did the ALJ) to the educators on Zachary's IEP Team:

> We have always been, and we should continue to be, reluctant to second-guess professional educators. As we observed in *Tice v. Botetourt County School Board*, 908 F.2d 1200, 1207 (4th Cir. 1990), "once a procedurally proper IEP has been formulated, a reviewing court should be reluctant indeed to second-guess the judgment of education professionals." Indeed, we should not "disturb an IEP simply because we disagree with its content," and we are obliged to "defer to educators' decisions as long as an IEP provided the child the basic floor of opportunity that access to special education and related services provides. *Id.* (internal citation and quotations omitted).

*MM*, 303 F.3d at 532-33.

**B.   Analysis**

12

The key issue in this case is whether MCPS provided Zachary with a FAPE.  To determine whether a disabled student is being provided a FAPE under the IDEA, courts follow the two-step approach articulated in *Rowley*.  As explained in *I.S.*,

> First, the Court must determine whether the state or local educational authority complied with the procedures set forth in the Act.  Second, the Court must determine whether the IEP was reasonably calculated to enable the child to receive educational benefits.

325 F.Supp.2d at 578 (citing *Rowley*, 458 U.S. at 206-07).

## 1.  Procedural Compliance

In her opinion, the ALJ noted, with regard to the first step of the *Rowley* inquiry: "In this case, there is no allegation that MCPS failed to follow the procedural strictures of the IDEA." Moreover, attorneys for both parties acknowledged that, outside of the notice issue, there were no independent procedural issues in dispute.  (Paper 6, Tr., at 775).

Despite this "agreement" during the hearing, in their motion for summary judgment, Plaintiffs argue that Defendants committed procedural violations.  Plaintiffs do not, however, point to any procedural provision of the IDEA or state law that Defendants violated, and the court is unclear as to what Plaintiffs are actually arguing in this regard.[10]  Plaintiffs state that MCPS was

_____

[10] Plaintiffs state, without providing any support or reference to the record, that "the ALJ explicitly held that MCPS violated the provisions of federal and State law - and, even more significantly, that Zac suffered harm as a result." (Paper 9, at 28).  The court has reviewed the ALJ's decision in its entirety and cannot find any statement to this effect whatsoever.  Moreover, the ALJ specifically found that, outside of the notice issue (which had to do with Plaintiffs' procedural violation and not that of MCPS), there were no procedural disputes at issue.  It defies logic that the ALJ would make explicit findings of legal violations regarding
(continued...)

"obligated before the start of the 2002-03 school year to develop an IEP for Zac," but there is no evidence that Zachary's parents requested an IEP meeting prior to the beginning of the school year. More importantly, Plaintiffs did not challenge the IEP for the 2002-2003 school year during the due process hearing; the only year at issue was 2003-2004. (Paper 6, ALJ decision, at 2). This court therefore lacks subject matter jurisdiction over any claim Plaintiffs may be making pertaining to the 2002-2003 school year. *MM ex re. DM & EM*, 303 F.3d 523, 536 (4th Cir. 2002) ("When parents of a disabled child challenge multiple IEPs in court, they must have exhausted their administrative remedies for *each academic year* in which an IEP is challenged.") (emphasis in original).

Plaintiffs also appear to be arguing that Defendants' alleged violation of the substantive provisions of the IDEA and corresponding state law denied Zachary due process of law and that this is equated to a procedural violation.  Plaintiffs may additionally be asserting, as Plaintiffs' attorney stated at the hearing, that the procedural issues are not independent but are tied into Plaintiff's substantive argument, e.g., the fact that it took four months to have Zachary's OT testing completed shows that MCPS was not adequately identifying Zachary's needs and therefore not providing a FAPE. (Paper 9, at 17).  From what the court can discern from Plaintiffs' briefs, any "procedural issues" that this court has subject matter jurisdiction over are tied to the

---

[10](...continued)
something she stated was not an issue.

14

substantive argument and will be analyzed accordingly.[11]

## 2.  Substantive Compliance

The ALJ, finding there were no procedural issues in dispute, proceeded to the substantive inquiry of the *Rowley* test, and considered whether Zachary's IEP was reasonably calculated to enable him to receive educational benefits.  In finding that the IEP met this test, Judge Miller stated:

> Although Zachary clearly made greater strides
> at the Lab School than he did at Goshen, it is
> quite evident from the above factual findings
> that Zachary made at least some meaningful
> progress in the 2002-2003 school year.  His
> Parents repeatedly expressed their support for
> and   agreement   with   the   program   being
> implemented by MCPS and they had affection and
> admiration  for  Mrs.  Storm,  the  special
> education teacher who was implementing that
> program.   Moreover, the testimony of MCPS'
> witnesses   and   the   overwhelming   bulk   of
> documentary evidence show that MCPS staff at
> Goshen were committed to Zachary's success and
> were open to doing whatever they reasonably
> could to help Zachary progress and to address
> his  Parents'  concerns.   It  is  certainly
> understandable that the Parents wanted the
> best possible education for Zachary, but the
> best possible education is not what the IDEA
> compels any school system to provide.

(Paper 6, ALJ decision, at 20).  Plaintiffs ask this court to reverse the ALJ's decision, arguing that the IEP is insufficient because it did not provide for the intensive level of services that Zachary required in order to obtain an educational benefit.

## a. Deference to the ALJ

---

[11] To the extent that Plaintiffs are making new procedural claims not asserted in the due process hearing, this court lacks subject matter jurisdiction over them.  *See* 20 U.S.C. § 1415(i)(2)(A) (stating that a party aggrieved by the "findings and decision" made in a due process hearing has the right to bring a civil action).

At the outset, Plaintiffs assert that the ALJ's decision "is rife with errors and inconsistencies" and that the ALJ "ignored and/or disregarded facts established by the compelling and overwhelmingly one-sided testimony of experts and Ms. Moholt, and then misapplied legal authority . . . ." (Paper 9, at 2). Due to these errors, Plaintiffs assert that the ALJ's findings were not "regularly made" and therefore deserve no deference. *See Doyle*, 953 F.2d at 105. However, other than Plaintiffs' conclusory assertion, there is no evidence that the ALJ did not make "regular findings."

Plaintiffs' primary assertion is that the ALJ disregarded the testimony of Plaintiffs' experts because "not a single word of this testimony found its way into the ALJ Decision." Failure to cite specific testimony does not mean that the ALJ ignored evidence. *See Alexis v. Bd. of Educ. for Balt. County Public Schs.*, 286 F.Supp.2d 551, 557 (D.Md. 2003) (finding that failure to discuss an expert report was not reversible error where it was clear from the record that she was fully aware of it and considered it when rendering her decision); *Waller v. Bd. of Educ. of Prince George's County*, 234 F.Supp.2d 531, 536 (D.Md. 2002) ("The failure of the ALJ to discuss [the expert's] negative evaluation of the proposed IEP is scant reason to upset the ALJ's decision.").

The record indicates that the ALJ heard and considered extensive testimony from Plaintiffs' witnesses, including experts in occupational therapy, speech/language pathology, and special education. The ALJ expressly relied on and cited Ms. Moholt's testimony in her opinion. Moreover, although the ALJ didn't cite the direct testimony of each of Plaintiffs' experts, the ALJ expressly acknowledged that Zachary's progress was better at the

Lab School, but correctly found that this fact was not dispositive for purposes of determining whether the IEP in question was appropriate.[12]  To the extent that Plaintiffs' experts testified that Goshen's IEP could not possibly provide an educational benefit to Zachary, the ALJ disagreed, thereby implicitly finding more persuasive the testimony of Defendants' experts.[13]  *See County Sch. Bd. of Henrico County, Va. v. Z.P.*, 399 F.3d 298, 306 (4th Cir. 2005) (stating that a hearing officer is not required "to explain in detail its reasons for accepting the testimony of one witness over that of another"); *A.B. ex rel. D.B. v. Lawson*, 354 F.3d 315, 329 (4th Cir. 2004) (noting that where an ALJ heard extensive testimony from the plaintiffs' experts asserting that an IEP did not offer a FAPE, but held otherwise, the ALJ "rest[ed] its opinion on an entirely contrary body of expert testimony [and] . . . obviously found the testimony of [the plaintiffs'] experts unpersuasive;" emphasizing that implicit credibility determinations are "as entitled to deference under *Doyle* as explicit findings").

Plaintiffs have not shown that the ALJ's findings were made in an irregular manner.  Instead, Plaintiffs essentially argue the merits of the testimony of various witnesses, and that their witnesses were more credible.  As the Fourth Circuit noted in *Doyle*, 953 F.2d at 104, "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."  *See also County Sch. Bd. of Henrico County, Va.*, 399

---

[12] All of Plaintiffs' experts were employees at the Lab School.

[13] Plaintiffs offered the testimony of several experts from the Lab School who stated that the proposed IEP was deficient. Defendants challenged the credibility of and assertions made by all Plaintiffs' witnesses through their own expert testimony.

F.3d at 307 ("[T]he mere fact that the hearing officer accepted the evidence of the parents over that of the School Board is not a reason to reject the hearing officer's findings."); *A.B. ex rel. D.B.*, 354 F.3d at 329 (reversing the district court's opinion where the court rejected the hearing officer's decision and noting that the district court wrongly disregarded the officer's resolution of conflicting expert testimony). The court will therefore consider the ALJ's findings *prima facie* correct. *Cavanagh*, 75 F.Supp.2d at 457.

**b.  Appropriateness of IEP**

The ALJ determined that the IEP was reasonably calculated to enable Zachary to receive some educational benefit. It is Plaintiffs' burden to establish otherwise. In order for an IEP to meet the required standard, it is not necessary that the level of special education proposed will optimize the child's potential. *Hartmann v. Loudoun County Bd. of Educ.,* 118 F.3d 996, 1001 (4th Cir. 1997). The benefit conferred, however, must amount to more than trivial progress. *See Reusch v. Fountain,* 872 F. Supp. 1421, 1425 (D.Md. 1994).

Here, the IEP team determined that the same IEP should be implemented for the 2003-2004 school year, as was implemented during Zachary's first grade year. Hence, it becomes important to consider the extent of Zachary's progress during the 2002-2003 year in determining whether the IEP was reasonably calculated to provide an educational benefit the following year. The ALJ found and the evidence shows that Zachary made meaningful progress during the 2002-2003 school year. In her analysis, the ALJ placed great reliance on the testimony of Ms. Moholt. Ms. Moholt expressly acknowledged that Zachary made progress during the 2002-2003 school

year, and stated that at no time during the June IEP meeting did
she object to the same IEP being implemented for the next year.
Further, Ms. Moholt's testimony regarding Zachary's progress during
2002-2003 was confirmed through the testimony of Ms. Storm, as well
as documentary evidence in the form of Zachary's IEP ratings and
his report card.  Instead of asserting that Zachary had no benefit
under the 2002-2003 IEP, what Ms. Moholt stated, and what the ALJ
placed emphasis on, was that she wanted her son to have an
"optimal" education.

The ALJ was absolutely correct in noting that an "optimal
education" is not mandated under the IDEA or Maryland law.  Both
the ALJ and this court owe great deference to the decisions made by
Zachary's IEP team.  *MM*, 303 F.3d at 532-33.  The ALJ found and
this court agrees that Zachary's IEP was calculated to provide a
reasonable educational benefit to him.  Moreover, the IEP team was
committed to helping Zachary learn and, although not legally
mandated, was willing to re-visit the IEP at regular intervals to
ensure that Zachary was benefitting.  Plaintiffs have not satisfied
their burden of showing that MCPS denied Zachary a FAPE.

## IV. Attorneys' Fees

In their cross-motion for summary judgment, Defendants request
that this court grant attorneys' fees and costs.  In relevant part,
20 U.S.C. § 1415(i)(3)(B) provides that a court, in its discretion,
may grant attorneys' fees:

> (II) to a prevailing party who is a State
> educational agency or local educational agency
> against the attorney of a parent who files a
> complaint or subsequent cause of action that
> is frivolous, unreasonable, or without
> foundation, or against the attorney of a

> parent who continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation; or
>
> (III) to a prevailing State educational agency or local educational agency against the attorney of a parent, or against the parent, if the parent's complaint or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation.

20 U.S.C. § 1415(i)(3)(B). Neither at its inception nor at any time during the litigation was this cause of action frivolous, unreasonable, or without foundation. Plaintiffs presented multiple expert witnesses who testified in support of Plaintiffs' position that Zachary was denied a meaningful educational benefit. The fact that Plaintiffs did not prevail during the administrative proceeding or in this court is not sufficient to establish frivolity or unreasonableness. Moreover, Defendants offer and the court can find no evidence that Plaintiffs presented their claim for any improper purpose. Accordingly, Defendants' request will be denied.

## V. Conclusion

For the foregoing reasons, summary judgment will be entered against Plaintiffs and in favor of Defendants. A separate Order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

20